Attorney General Sessions v. Pichimarov Good afternoon, Your Honors. May it please the Court. My name is Nicolette Blazin, and I represent the petitioner in this matter, Mr. Ivan Pichimarov. At this point, the primary contention between the parties is whether this Court has jurisdiction to review the two mandatory forms of relief that were denied by the agency, withholding of removal and relief under Article III of the Convention Against Torture. We respectfully submit, Your Honor, that four factors mandate that the Court finds jurisdiction, and that is, first, the presumption of judicial review of administrative action. Second, the language of Section 242A.C.2 and 242A.4. But what's the legal question here? I mean, we have him admitting that he was convicted of a crime involving moral turpitude. Now, whether he should have admitted that or not is not relevant anymore. He admits that. And so we can't review this unless there is a constitutional question or a question of law, and I'm not sure what counts as that under the cases as you've presented it. This is not a deferral of removal case under the Convention Against Torture. It's a denial. Well, Your Honor, deferral of removal is in no way different than withholding. Yes, it is. We've explained this in great detail, and there are different criteria, as the government has also explained, that would make you eligible or not eligible for deferral. It's in its own category, and so you can't just take deferral of removal cases and apply them to denial of removal. Your Honor, if you look at the two forms of relief, the only difference in the statutory scheme is that to finish or to terminate deferral, one other possibility is, and that is, a diplomatic assurance will be sufficient. However, it is the same exact legal standard. It is likelihood of torture. It is also mandatory relief that in no way affects whether there is an order of removal or not. It doesn't change it. An order of removal must be issued by the immigration judge, and it is at the discretion of the government to terminate it because it is a specific relief to person and country. Well, but I really want to stress that, first of all, the law has drawn a distinction between the very narrow set of circumstances in which deferral of removal is possible. We talked about it in the Wanjiru case and so on, and situations where somebody is seeking withholding of removal or other things, and there's just a very narrow set of circumstances, as the government points out, that would allow you to... Deferral is sort of a safety valve. I mean, the United States is a party to the Convention Against Torture. We don't send people back to countries where they're going to be tortured if that can be proven, and so it's a little bit of a safety valve, but in the ordinary withholding of removal situation, you don't need that safety valve because you have the regular processes that are available, and we've never... I mean, if you're arguing for us to extend all of the law on deferral of removal to withholding, what's likely to happen is that no one will get review of deferral of removal either. It won't be the outcome that you're looking for. Well, deferral of removal is only available to those who don't qualify for withholding under CAPT, meaning a person who is an aggravated felon will not be entitled to receive withholding under CAPT. They will only be allowed to receive deferral. But that's not this man. Well, the judge will never reach deferral if it denies withholding under CAPT because he's not an aggravated felon, meaning if the only way... He's a moral turpitude person. He's not an aggravated felon. He's not an aggravated felon, so he's not prohibited from... But there's no review of the moral turpitude finding. But the question, Your Honor, is it's 242A2C states that the court does not have... by reason of having committed, and so on and so on, 1182A, the crimes of moral turpitude. Correct. So that's no jurisdiction. Correct. And there's the only exception that exists is the capital D exception for constitutional questions and questions of law, and you haven't presented one. Well, Your Honor, I will respectfully... I mean, actually, the government agreed with us that the question of the burden of proof and statutory eligibility is a legal question. And I believe we submitted it. My point is that 242A4 addresses CAPT relief, and in that particular section, Congress said that notwithstanding any other provision of law, petition for review in an appellate court is the only matter to review any claims... Well, that's right, because I wanted to get people to stop using habeas corpus. That's happened. That's ancient history at this point. Everybody files petitions for review. That's all that does. But it says any claim or cause under CAPT. There's two forms of causes of action under CAPT, withholding of removal and deferral of removal. Congress would not have used that particular section and included it if it intended to prohibit one form of relief under CAPT to be unreviewable and the other to be reviewable. Further, it prevents any claim or cause of action. That means both factual and legal. Otherwise, it will not need to include 242A4 when we have the D subsection, which specifically allows review of a legal claim or constitutional claim. So if we do not read that particular section, we will make the judgment that Congress simply put something that is entirely superfluous. I'm just going to say, before your time runs out, that this also strikes me as a very bad case in which to think about these things, because under the facts that have been presented here, it's very hard for me to see the kind of government involvement with the kind of activities that count as torture under the Convention Against Torture as having gone on. He certainly didn't want to cooperate with these Gruberowski thugs, whoever they were, but this is a far cry from government-sponsored or government-tolerated torture. This particular case is—I see my time is up. You're in your rebuttal time. You can give me a quick answer and then— Well, Your Honor, in this case, this is a prospective relief case, and we have presented both statistical evidence and evidence that shows that these Gruberowskis are part and parcel of the actual government structure. Okay. I'll leave it at that for right now, and you can expand on rebuttal if you want. Ms. Strokas. Good morning, Your Honors, and may it please the Court. My name is Jessica Strokas for the respondent. This Court should dismiss the petition under Section 242A2C of the Immigration and Nationality Act because it lacks jurisdiction where Mr. Petimorov was convicted of a crime involving moral turpitude, and that was the underlying reason for his removal order. While the petitioner contends that Subsection A4 extends this Court's jurisdiction to all CAT claims, this Court has already resolved that question. In fact, it was the first of five courts to have resolved that question. It did so in 2005 in Hamid V. Gonzalez. And as Chief Judge Wood recognized, all in that case, this Court decided that all that Subsection A4 did was remove habeas jurisdiction in the district courts over CAT claims and mandated that CAT claims be brought in a petition for review in the Courts of Appeals. Also in that case, this Court recognized that those claims are subject to the same jurisdictional limitations, including Subsection A2C in Section 242 of the Immigration and Nationality Act. And so unless Mr. Petimorov had included a colorable constitutional claim or question of law in his petition to restore this Court's jurisdiction under Section 242A2D, this Court lacks jurisdiction over his claim. His moral turpitude crime was what? I'm trying to remember what he did. A crime involving moral turpitude. Arkansas statute. Did he shoplift? He shoplifted, right? It was theft of property, yes, in Arkansas. All right, so he shoplifted. Yes. Pretty serious penalty for shoplifting. Yes, Your Honor. However, theft is typically considered to be a crime involving moral turpitude. Also, Mr. Petimorov conceded. We have commented before, this is one of the worst defined old terms that the law has because, frankly, it's hard for me to think of any crime that makes one worthy. And so if you've committed a crime, period, there's already a problem with you, unless it's speeding maybe or something, but that's usually handled differently. Yes, Your Honor, and as you already recognize, Mr. Petimorov did not challenge his removal order that the crime involving moral turpitude ground to the agency, and he does not contend that to this court. In fact, in his reply brief, he specifically states that he's not challenging the underlying order of removal. He's only challenging the agency's weighing of factors and factual conclusions that he did not meet his burdens for asylum, withholding of removal, and protection under the Convention Against Torture. And as this court noted, Mr. Petimorov is only eligible for cat withholding. He was not eligible for cat deferral. And while this court does have precedent stating that jurisdiction extends to cat deferral, it similarly has precedent that states that it does not extend to cat withholding because cat deferral is so exceptionally unique of a form of protection that it is not even a final order of removal subject to the jurisdictional limitation in Section 242A2C. So did the government make anything much in this case of the fact that since, if I'm remembering, 2007, Bulgaria has been a member of the European Union and obviously has been part of the Council of Europe and subject to the Strasbourg Court and all the rest of that? Your Honor, I believe before the immigration judge, or maybe it was the immigration judge, before the immigration judge, Mr. Petimorov was asked about that. I don't have the record before me right now. Most of the events, now they're very clear, they're not relying on past persecution, but the events that triggered his concerns about going back are all in the mid-'90s, right? Yes, Your Honor. And when he was asked about the inclusion of Bulgaria in the European Union and whether or not he would be able to move to another area and work in another area of the European Union, I believe his responses were that he did not think that he could do so, but he hadn't really looked into it. And when he asked his parents about it, they just said that he couldn't. So going into that isn't really before this court right now anyway because this court lacks jurisdiction under Section 242A2C, and Mr. Petimorov has not raised any collorible constitutional claim or question of law. And while the government does concede that failure to consider the testimony and evidence in the case or requiring him to improperly demonstrate an improper legal standard, it is also our contention that these claims are either refuted by the record or already resolved by this court's precedent. In the record, first, the board is entitled to the presumption of regularity that it considered all of the evidence in the case, and Mr. Petimorov bore the burden of demonstrating that the agency did not do so, and the agency's decisions in this case included references to several country conditions reports, notations that one of those reports specifically stated that not all Roma in Bulgaria were persecuted. It included references to Mr. Petimorov's testimony that he did fear criminal groups and not the Bulgarian government or anybody involved in the Bulgarian government. But there's also some evidence that suggests that these criminal groups, at least at some point, whether this is still the case or not, the record, who knows, that were inserted into the local police departments were actually part of the government. Yes, Your Honor, there is some evidence of that in the record, but again, all that evidence dates back to the late 90s and early 2000s. To the contrary, there is also ample evidence in the record that conditions have been improving. For the Roma in particular. For the Roma in particular. And also, I believe it's the 2011 State Department report indicated that the Bulgarian government has been actively battling xenophobic sentiment against the Roma, has been creating housing programs for the Roma, and, in fact, the police recently protected a Romani crime boss from prosecution in a case involving deliberate killing. If there are no further questions. Okay. We respectfully ask this court to dismiss the petition from review. Thank you. Thank you. Anything further, Ms. Glazer? With respect to the European Union and the inclusion of Bulgaria, that was asked by the judge, and Mr. Pichumarov did testify that it was included. However, the Roma are not welcomed within Europe, and, in fact, the report that was presided, and that's in administrative record 332, as well as 373, shows that, in fact, in entire Eastern and Central Europe, Romani are subject to severe abuses. No, they're traditionally discriminated against group, there's no question. Now, it's a matter of law of the European Union. Once Bulgaria became a country, the free movement of goods, services, capital, and people would have begun. Right. Now, with respect to the government's claim that all the record is regarding the 90s, I respectfully disagree with that. The Sashov v. Bulgaria case, that was the European Court of Human Rights case, was actually a 2011 case, and that found that police has engaged in torture against Romani. Also, we have a record 373 to 374, the mayor of Dupnica testifies, and describes that after 2005, the Grupyarovki within that particular country, the city, have become, alas, more blatant, and actually infiltrated and controlled the government of that municipality of which he was a resident. So, it is a question of a statistical evidence that has been presented, and the documents that provide that Romani in Bulgaria, and specifically in that southeastern part of the country, have been marginalized to an extent where there is, as one report says, there is a civil war, new form of civil war against the Romas. So, respectfully, we will ask the court to find out the board standard, finding that all Romani have to be subject to a pattern of practice in order for the pattern of practice claim to come into play is not supported by the law. Okay. Thank you very much. Thanks to both counsel. We'll take the case under advisement.